UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

K-S-

    v.                                                                                           Civil No. 25-cv-288-SE
                                                                                             Opinion No. 2025 DNH 145

Warden, FCI-Berlin, et al.

O R D E R

        K-S-, an asylum-seeker from Morocco, petitions this court under 28 U.S.C. § 2241 for an order directing the respondents to provide him with "a constitutionally adequate, individualized bond hearing at which the government will bear the burden of establishing, by clear and convincing evidence, that [his] continued detention is justified." Doc. no. 1 at 10. The respondents argue that K-S- is mandatorily detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). K-S- argues, however, that his prolonged detention without an individualized custody determination violates the Due Process Clause of the Fifth Amendment. The respondents move to dismiss the petition, or alternatively, for summary judgment. Doc. no. 16.

        The court concludes that K-S-'s continued detention offends due process as applied in the specific circumstances of this case. Accordingly, the court denies the respondents' motion to dismiss or for summary judgment, grants the petition, and orders the respondents to provide K-S- with a constitutionally adequate bond hearing in Immigration Court as soon as possible. At that hearing, "due process requires the government to either (1) prove by clear and convincing evidence that [K-S-] poses a danger to the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk." Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021).

Background

The following facts are drawn from the allegations in K-S-'s petition, doc. no. 1, which are corroborated by a declaration from a federal agent with knowledge of the respondents' operations and K-S-'s immigration history. Doc no. 16–2.

Before traveling to the United States, K-S- journeyed from his native Morocco through several countries and unsuccessfully sought asylum in Germany. On July 27, 2024, K-S- arrived in the United States as a stowaway on a container ship. He had concealed himself in the trunk of a car aboard the ship. While at sea, he was discovered and detained by the ship's crew. When the ship docked in Rhode Island, the crew turned K-S- over to immigration authorities.

Since reaching the United States, K-S- has been detained as an "arriving" noncitizen with a credible fear of persecution pursuant to § 1225(b)(1)(B)(ii). In a decision dated May 23, 2025, an immigration judge (IJ) granted his application for asylum based on his fear of persecution in Morocco on account of his sexual orientation. Doc. no. 23–1; see 8 U.S.C. § 1158(b)(1)(A); id. § 1101(a)(42)(A). The IJ did not reach K-S-'s applications for statutory withholding of removal or protection under the Convention Against Torture (CAT). Doc. no. 23–1; see 8 U.S.C. § 1231(b)(3); 8 C.F.R § 208.16(c); id. § 208.17(a).

The respondents administratively appealed the IJ's ruling to the Board of Immigration Appeals (BIA). Doc. no. 23–2. Though fully briefed, that appeal remains pending. Doc. no. 23–2, 3. K-S- has filed a motion to remand to the IJ for consideration of new evidence in the event that the BIA sustains the respondents' appeal. Doc. no. 23–4. After the IJ granted his asylum application and as his detention approached the one-year mark, K-S- requested discretionary parole under 8 U.S.C. § 1182(d)(5), but the respondents denied his request.

At this point, K-S- has been detained without a bond hearing for over sixteen months. The respondents have held him in at least three different facilities during that period. After his initial arrest, the respondents transferred K-S- to Donald W. Wyatt Detention Center Facility in Rhode Island. The respondents later transferred him to the Federal Correctional Institution in Berlin, New Hampshire (FCI Berlin). Finally, they transferred him to Plymouth County Correctional Facility in Plymouth, Massachusetts.

## Discussion

Section 2241 grants district courts jurisdiction to hear habeas corpus challenges to the legality of noncitizens' detentions in federal custody. Rasul v. Bush, 542 U.S. 466, 483–84 (2004); Zadvydas v. Davis, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))). "The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

In ruling on a motion to dismiss, "the court must take all of the pleaded factual allegations in the complaint as true," "make reasonable inferences . . . in the pleader's favor," and "determine whether the factual allegations in the plaintiff's complaint set forth 'a plausible claim upon which relief may be granted.'" Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014) (quotation omitted). Similarly, on a motion for summary judgment, "the court must determine whether 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. at 72 (quoting Fed. R. Civ. P. 56(a)).

K-S- argues that even if his detention is mandated by statute, he retains constitutional due process rights that protect against unreasonably prolonged detention. His petition alleges a single count: that he is entitled to a bond hearing under the Due Process Clause of the Fifth Amendment. Doc. no. 1 at 9–10. The respondents counter that (1) K-S-, as an arriving noncitizen, is entitled only to the process provided by statute, and (2) even if K-S- is entitled to due process protections, his detention is reasonable. Doc. no. 16.

The respondents' argument that K-S-'s detention is not unreasonable does not analyze the specific facts of the detention at issue. Instead, the respondents argue only generally that mandatory detention without a bond hearing during the pendency of removal proceedings is constitutionally permissible. Problematically, the Supreme Court cases on which the respondents rely for this premise leave open, and at times explicitly avoid, the constitutional questions of whether and when a noncitizen's detention pending final adjudication of his asylum application offends due process.

I.     The Due Process Clause Applies

The court recognizes that the Supreme Court "has long held that [a noncitizen] seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude [noncitizens] is a sovereign prerogative." Landon v. Plasencia, 459 U.S. 21, 32 (1982); Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953). Indeed, the Court has stated that a noncitizen who has not "effected an entry" is entitled to "only those rights regarding admission that Congress has provided by statute." Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 105 (2020). For

several reasons, however, Supreme Court precedent does not foreclose K-S-'s due process challenge to the circumstances and length of his detention as applied to him.

First, the holding in Thuraissigiam "circumscribed only due process rights to challenge admission decisions—in the case of the Thuraissigiam petitioner, denial of his asylum application—and left open due process challenges to prolonged detention." Fils-Aime v. FCI Berlin, Warden, No. 1:25-CV-287-JL-TSM, 2025 WL 3063164, at *3 (D.N.H. Oct. 31, 2025); see also, e.g., Lopez-Arevelo v. Ripa, no. EP-25-CV-337-KC, 2025 WL 2691828, at *8 (W.D. Tex. Sept. 22, 2025). In describing the scope of habeas relief, the Court made clear that the federal habeas statute at its core permits challenges to unlawful detentions, but it cannot provide another "opportunity to remain lawfully in the United States." Thuraissigiam, 591 U.S. at 107, 119; see also Trump v. J. G. G., 604 U.S. 670, 672 (2025) ("Regardless of whether the [immigration] detainees formally request release from confinement, because their claims for relief 'necessarily imply the invalidity' of their confinement and removal under the [Alien Enemies Act] their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." (quotations omitted)).

In contrast to K-S-'s due process claim seeking to "secure *release* from unlawful detention," Thuraissigiam attempted to "obtain additional administrative review of his asylum claim and ultimately obtain authorization to stay in this country." Thuraissigiam, 591 U.S. at 107 (emphasis in original); see also Fils-Aime, 2025 WL 3063164, at *3. It was against that backdrop that the Court held that a noncitizen in Thuraissigiam's "position has only those rights regarding admission that Congress has provided by statute." Id. at 140. But the Court plainly did not circumscribe as-applied due process challenges to immigration detentions. See id. at 117–18 ("In this case, however, respondent did not ask to be released. Instead, he sought entirely different

5

relief: vacatur of his 'removal order' and 'an order directing [the Department of Homeland Security] to provide him with a new . . . opportunity to apply for asylum and other relief from removal.'").

Second, the Court's decision in Mezei can be read only for the narrow proposition it sets forth. 345 U.S. at 216. There, the Court upheld a twenty-one-month hearing-less detention on Ellis Island where the "exclusion proceeding [was] grounded on danger to the national security." Id. While Mezei appears to permit a noncitizen found to be a national security threat to be detained at a port of entry for a prolonged period, that rule is consistent with other circumstances in which the Court has permitted categorical rather than individualized custody determinations regarding certain groups of noncitizens. See Velasques Rincon v. Hyde, et al., no. CV 25-12633-BEM, 2025 WL 3122784, at *7 (D. Mass. Nov. 7, 2025) ("[T]he Demore Court held that Congress, competent to make 'reasonable presumptions and generic rules,' could provide for a 'brief' period of mandatory detention for [a] 'narrow' class." (quoting Demore v. Kim, 538 U.S. 510, 513, 526 (2003))). Here, unlike the noncitizen in Mezei, who was inadmissible on national security grounds, the respondents have raised no such concerns about K-S-. See Fils-Aime, 2025 WL 3063164, at *3 n.27. On the contrary, an IJ has found K-S- eligible for asylum and thus admissible on that basis.

Third, in Hernandez-Lara, the First Circuit recognized that the Supreme Court in Jennings v. Rodriguez "left for another day . . . the constitutional question" of whether the Due Process Clause requires that detained noncitizens receive "periodic bond hearings" to justify their continued detention. 10 F.4th at 27 (citing 583 U.S. 281, 312 (2018)); see also Johnson v. Arteaga-Martinez, 596 U.S. 573, 583 (2022) ("The Government also notes that as-applied constitutional challenges remain available to address 'exceptional' cases."). The First Circuit,

faced with the due process question expressly left open in Jennings, held that "in order to continue detaining [the petitioner] under section 1226(a), due process requires the government to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." Id. at 41.

The court recognizes that the bond hearing in Hernandez-Lara was authorized by § 1226, whereas K-S- is detained under § 1225, which does not provide for a bond hearing. But statutory authority or lack thereof is not relevant to the requirements imposed by the Due Process Clause of the Fifth Amendment. On the contrary, it is a logical extension of Hernandez-Lara's holding that if the government must prove the existence of a flight risk or dangerousness to justify the continued detention of a noncitizen, the respondents here are constitutionally compelled to provide such a hearing.

II.    K-S-'s Detention is Unreasonably Prolonged

To determine whether his detention has become unreasonably prolonged in violation of the Due Process Clause, K-S- asks this court to join others in this district and elsewhere by applying a four-factor, non-exhaustive reasonableness test. See German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 208 (3d Cir. 2020); see also A.L. v. Oddo, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) (applying the German Santos test); Fils-Aime, 2025 WL 3063164, at *4–5 (same). The respondents neither object to nor address the propriety of this analysis.

The test urged by K-S- "considers length of detention, likely duration of future detention, the reasons for the delay, and whether the conditions of confinement are 'meaningfully different from criminal punishment.'" Fils-Aime, 2025 WL 3063164, at *4 (quotations omitted). Because

7

the respondents do not object to the application of the four-part reasonableness test, the court will apply the test requested by K-S-.

A. Length of Detention

When considering whether the length of a detention implicates due process, courts consider the entire period a noncitizen has been deprived of his liberty, regardless of the statutory authority governing his detention. Id. (citing Bourguignon v. MacDonald, 667 F. Supp. 2d 175, 183 (D. Mass. 2009)). "Though no bright-line rule dictates when detention has become unreasonably prolonged, 'detention is likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics.'" Id. (quotations omitted).

Here, K-S- has been detained since July 27, 2024. On that date, the crew of the ship on which K-S- had stowed away turned him over to immigration authorities. Thus, at the time of the filing of this order, K-S- has been detained for over sixteen months. Further, promptly upon his arrival in the United States, K-S- filed an asylum application on September 23, 2024. The IJ granted that application on May 23, 2025.

Thus, K-S-'s detention has spanned well over a year, and he is not responsible for any delay in resolving his removal proceedings. Given that courts have found much shorter detentions unreasonable, the over-sixteen-month detention here weighs in favor of a due process violation. See, e.g., A.L., 761 F. Supp. 3d at 826 ("Petitioner has been held in custody without a bond hearing for nearly ten months.").

B.  Likely Duration of Future Detention

Next, courts consider the likely duration of future detention in view of the procedural hurdles before the noncitizen's removal proceedings reach final resolution. In Fils-Aime, the petitioner had appealed the denial of his asylum application to the BIA, and anticipated filing another appeal based on the outcome of his administrative appeal, so the court found that it was "likely that Petitioner's detention will continue while his appeals are adjudicated, which could take several months." 2025 WL 3063164, at *5. Here, the government's administrative appeal is pending before the BIA. Should that appeal be sustained, K-S-'s case will be remanded to the IJ for consideration of his withholding and CAT claims, which the IJ did not reach. Further, the BIA may grant K-S-'s motion to remand for consideration of new evidence. Accordingly, the court agrees with K-S- that his detention could continue for "several more months if not more than a year." Doc. no. 23 at 10.

C.  Reasons for Delay

It strongly weighs in favor of K-S- that the respondents persisted in detaining him after the IJ granted his asylum application well over six months ago. The respondents, not K-S-, administratively appealed the IJ's grant of asylum to the BIA, and further denied K-S-'s request for discretionary parole pursuant to § 1182(d)(5). K-S- points out that it appears that the respondents' policy "favors release of [a noncitizen]" who has been "granted asylum . . ., absent exceptional concerns." Doc. no. 23–1 at 10–11; doc. no. 23–6. In Fils-Aime, the court considered that "the respondents held the petitioner for over three months after he had received a withholding of removal." 2025 WL 3063164, at *5. Similar circumstances favor K-S- here.

9

D. Conditions of Confinement

Finally, K-S- is and has been detained under conditions indistinguishable from those meant for criminal punishment. He has been held at three facilities—the Wyatt Detention Facility, FCI Berlin, and the Plymouth County Correctional Facility—all of which are "penal facilities." Id. (citing Hernandez-Lara, 10 F.4th at 28 ("Hernandez was incarcerated alongside criminal inmates at the Strafford County Jail for over ten months.")) (alteration omitted).

Conclusion

In sum, the Due Process Clause protects K-S- from unreasonably prolonged detention. Under the specific facts of this case, the court finds that K-S-'s sixteen-month hearing-less detention has become unreasonably prolonged. "The remedy for a prolonged detention is a bond hearing before an immigration judge at which the government bears the burden of proving that the [noncitizen] should not be released on bond." Id. (quotations and alterations in original omitted). Under Hernandez-Lara, "due process requires the government to either (1) prove by clear and convincing evidence that [K-S] poses a danger to the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk." 10 F.4th at 41.

The court thus grants the petition and orders the respondents to provide K-S- with a bond hearing before an IJ as soon as practicable. Because a bond hearing in this case is required by the Due Process Clause, the IJ has jurisdiction to grant K-S- release pending final resolution of his immigration proceedings.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

December 17, 2025
cc:     Counsel of record.

10